Good morning, Your Honors. May it please the Court, Peter Romer-Freedman for the plaintiff appellate and Lieutenant Kevin Ziober. I'd like to reserve three minutes of my time for rebuttal. Since the 1940s, federal law has guaranteed that service members like my client can take time off from work to serve in the armed forces, return to their jobs without any disadvantage. And throughout its history, the federal reemployment rights law has remained the strongest employment law that we've had in our country. It's powerful not just because of the strong substantive rights that it provides, but also, and importantly, because of the strong procedural rights, the unusual and novel procedural enforcement rights it has. Does the statute provide an actual right to litigate your claim in court as opposed to some other form? Section 4323 of USERRA provides jurisdiction for a plaintiff under the law. I'm looking at the statute, just puzzling over this morning, in fact. So point me to the language that you think creates this kind of rock-solid right to litigate your claim in a court as opposed to in an arbitral form. Yes, Your Honor. So we, Section 4323 provides a right of action and a cause of action to bring a USERRA claim. Right. But that's different than, and we're not maintaining that 4323 preserves a right to sue no matter what. It's 4302B, which is the anti-waiver provision, that preserves all rights, including substantive. But if you don't, if the statute doesn't give you a right to litigate in court, then I guess I'm not sure how 4302, am I getting the number right, 4302B? I'm not sure how that language in that statute helps you. Don't you first have to establish that there is this procedural right, as you were just describing, to litigate in court, and then the additional prerequisites language of 4302 kicks in? Well, the Supreme Court has never said as much. And there certainly are cases like CompuCredit where the Supreme Court has said that just preserving any right and somewhere else in the law creating a right of action is not enough. But there's no, there's been no law in this circuit or in the Supreme Court where a court has said you have to have an explicit right to sue language embodied in the text of the law as opposed to a cause of action, a right to the court to have jurisdiction, and anti-waiver. Hang on. Let me just tell you where I was going with this. Sure. Because it does involve CompuCredit. So I guess, tell me if my reading of CompuCredit is wrong. In CompuCredit, we do have this extra provision in the statute, the anti-waiver provision, right? And you look at it and you say, oh, boy, that looks pretty good. You can't waive any rights. But I guess I read the court to say that didn't help the plaintiff there because there was no right to sue guaranteed by the statute, not no right to sue in court, guaranteed by the statute in the first place. And so it seemed like that same reasoning could potentially apply in your case unless you were going to be able to convince us that USERA, unlike the statute in CompuCredit, did guarantee a right to sue in court. So am I wrong in the analysis? I think you're wrong in comparing the two statutes. In CompuCredit, the majority opinion was talking about how the disclosure provision that had to be given to consumers said that you have a right to sue, but the underlying statute didn't create a right to sue. Here, there is a provision that does create a right to bring the right to sue in court. That's the key thing. Everyone's going to concede that USERA creates a cause of action, right? That's right. Nobody's disputing that. But where in the statute does it create a right to sue in court? Well, our position is that what CompuCredit says is that any right doesn't necessarily mean procedural rights. You have to show more in an anti-waiver provision to protect procedural rights, and we have that here. If you look at the last clause of 4302B, this is something that's never been in a federal anti-waiver provision. It protects against, in illustrating what right or benefit means, it says, including the establishment of additional prerequisites to the exercise of any right. And that is so focused on protecting procedural rights because of the language that says that, you know, you're exercising a right, something that stands in the way of exercising a right. Because we see that that's about procedural rights, it makes clear that any right or benefit earlier in 4302B is talking about both substance and procedure. I follow you on that, but I'm just saying let's say that the statute of 4323, let's just say that that's read only to create a right of action which you can litigate in any form. It doesn't have to be in court. It could be in arbitration. It could be anywhere, right? And that's the only procedural right that was guaranteed by the statute. If that's true, then when we go to 4302B, right, I don't think the additional prerequisites language would help you because the fact that your client agreed to arbitration, that's okay. That's not inconsistent with anything, any right that was granted under the 4323. Well, Your Honor, if you look at page 68 of the Senate report, the Senate described, and these bills were passed unanimously, no objections, no roll call votes. Everyone was in support of this legislation. It said that there's entitlement to bring an action in federal court if you're a service member suing under USERRA. That is very different than any other language I've seen in describing the right. You said that's page 68 of the Senate report? That's correct, Your Honor. In describing how a service member would bring their claim under USERRA, page 68 of the Senate report says, an individual would be entitled to privately commence an action for relief in an appropriate U.S. district court if the individual had chosen not to apply to the Secretary of Labor for assistance. And, of course, the Secretary of Labor can just investigate and refer to DOJ for prosecution. And so there you have the authors of this bill saying clearly there's an entitlement to bring an action. In addition, I think the big difference between CompuCredit in this case, CompuCredit is looking at a statute, the CROA, that didn't have 50, 60 years of preexisting history. Here we have USERRA, which is the last in a long line of statutes dating back to the 1940s, where the Supreme Court had interpreted, and this court had interpreted, virtually every part of that law. And in enacting USERRA, Congress said the preexisting case law should continue. And in this, under the law of this circuit, when you have a recodification of a prior law, the expectation is that unless Congress states a totally different rule, that the prior jurisprudence continues. Here, that's McKinney. McKinney banned forced arbitration in 1958 and had been the law of the land until 1994. And we believe it still is the law of the land. McKinney comes at fish gold in 46. The Supreme Court says you can't cut down, take away the rights of a service member. In 58, the Supreme Court says, McKinney, if you are being asked by your employer to grieve or arbitrate your claim under the Veterans Reemployment Rights Law, that stands in the way of you enforcing your special rights as a service member in federal court, and you can't waive it, no matter what. And in McKinney was the, if I'm remembering right, there was some grievance procedure set up by a collective bargaining agreement? That's right. So in McKinney, there was a grievance procedure that was required by the CBA, the collective bargaining agreement. Okay, that's what I was going to ask. Hang on. Was it required, or was it just sort of an additional avenue of relief made available to the union members? It was required, in addition, under the Railway Labor Act, and the McKinney cites to the National Railroad Adjustment Board, which is the procedure for arbitrating claims, disputes for railroad workers. The grievance and the arbitration procedures of the CBA and the Railway Labor Act, another federal law, would have required the plaintiff in that case to exhaust his remedies there and actually get a determination on the merits, just like arbitration today. Isn't that different, though, from here? Because the arbitration or the contractual provision here, as opposed to McKinney talking about the CBA, which did add a prerequisite step before they could go forward, here it seems like the contractual provision operates more like a form selection clause and forces an employee to choose or an employee to arbitrate the claim rather than go to federal court to litigate it. I mean, there's no prerequisite here in this case. Well, two answers to that, Your Honor. First, in McKinney, where the Supreme Court referenced the National Railroad Adjustment Board, it's attached at the back of our brief, 45 U.S.C. 153. It talks about the arbitration decision or the decision by a neutral of a dispute being conclusive, in the same way that in bilateral non-union arbitration in this day and age, it's virtually unreviewable by a federal court on the merits. So it's the same in that sense. In addition, the Supreme Court has referred to arbitration as a prerequisite. In the Alpa v. Miller case in 1996, the Supreme Court referred to arbitration when it stands in the way of you eventually getting your rights enforced in court, it is a prerequisite. And if you look at the ‑‑ if you connect the language in the last clause of 4302B with the legislative history, it becomes clear what Congress had on its mind when they were talking about prerequisite. If you look at the House report at page 20, the ‑‑ Are you talking about the more recent legislative history? Is that what you're talking about? That's right. The legislative history of USERRA back in 1993, 1994, Congress set forth two rules that I think cannot be squared with the Federal Arbitration Act. The first, in Sidney McKinney, they said that we ‑‑ this section would reaffirm that additional resort to mechanisms such as grievance procedures or arbitration or similar administrative appeals is not required. And then it is the committee's intent that even if a person protected under the act resorts to arbitration, any arbitration decision shall not be binding as a matter of law. That's exactly the opposite of how the Federal Arbitration Act works, Your Honors. Well, that ‑‑ I'm sorry. Why isn't that just an indication that Congress sort of admits it wasn't clear in the first place, that it had not spoken clearly with respect to the original act regarding this? Well, you can look at it in two different ways, Your Honor. One is, in Gilmer, the Supreme Court, three years before USERRA was enacted, said that in the text, legislative history, or purpose, Congress can make clear that there's a contrary congressional command. I submit that this is, in the legislative history, a contrary congressional command. The way that we can view the language of the statute, 4302B, is clear. In addition to looking at the prior case law that informs what the text means, Congress was not just thinking about arbitration in terms of what it was banning. It was protecting all procedural rights. And if you look at the House report, they're saying grievance procedures, pension exhaustion, arbitration are all things that stand in the way of the right to sue. And so when they were explaining in the statute what they were trying to protect against, it was the establishment of any additional prerequisite to exercising your rights. So if they had just said arbitration, arbitration, arbitration in the law, they would have been leaving out all these other things that McKinney and other cases had protected in terms of procedural rights in the past. And that would have actually weakened USERRA as opposed to recodifying it and strengthening it, which was the explicit purpose of the law in 1994. All right. You wanted to save some time. Okay. Thank you.  Lonnie Giamella, Fisher & Phillips, on behalf of the respondent BLB Resources, Inc. BLB Resources is very grateful for the service that Lieutenant Ziober and our servicemen and women give to our country on a daily basis. They believe strongly in the anti-discrimination provisions of USERRA and has a history of employing uniformed service members. It looks forward to defending itself against the wrongful termination claims brought by Lieutenant Ziober. But pursuant to a pre-dispute arbitration agreement entered into by Lieutenant Ziober, these claims must be arbitrated in arbitration. Well, unless the statute, you know, sort of eviscerates that requirement. So why don't you just jump into the points we've been talking about. So let me put the same question to you. Absolutely. Why doesn't USERRA create a right to sue in court on behalf of service members? Let me start off, Your Honor, just by sort of going back to a latter question and coming back to it. If we look at the history of the case law dealing with service members and the predecessor statute to USERRA, McKinney, Fishgold, Kidder, and Immel, all of which are cited in the brief, there's one thing consistent, in fact, two things that are consistent. You're dealing with a unionized employee who has to grieve as part of a collective bargaining agreement that's mandatory or hurdle, an additional prerequisite prior to getting to the federal court. In each of those cases, we dealt with a term and condition. In McKinney and in Fishgold, we dealt with a situation by which seniority was not provided upon return. The employee had to grieve and then appealed it to a federal court and said, you can't, that grievance is an impermissible hurdle, additional prerequisite. In the Kidder case, we dealt with holiday pay not being provided on Memorial Day for a uniformed service member. And finally, in Immel, we dealt with seniority not being given to an employee, unionized employee, for pension trust. So when you take those all together and you focus in on 4302, you deal with two prongs. First, terms and conditions. And those terms and conditions are defined in the subsequent statute, 4303. What do you mean terms and conditions? So, for example, Your Honor. No, I'm sorry. I apologize. With right or benefit. Let me use the end, and thank you for clarifying. And then it goes to additional prerequisites. And if you. The exercise of any such right, and that's not, I don't read that as being tied to the defined term rights and benefits. Correct. Meaning that the bringing of the case is an exercise of a right, not itself a right in and of itself. No, no. I mean, the question is whether it seems to me, but tell me if I'm wrong. The question is whether the reference to the exercise of any such right there at the very end of 4302B is talking about a right to sue in court that this statute has taken as a whole guarantees. Correct. So it depends on how you look at it. You can look at it in two regards. A strict interpretation of this term, because the term right or benefit is defined in the subsequent section 4303 and does not involve bringing the case. It devolves the seniority. Right. And essentially saying I am going to exercise my right to get this seniority. Part of that exercise is to bring a case in court. You can't set up the hurdle, which is the collective bargaining agreement, which is not present here. For example, in taking the HR 20, the page 20 of the House report, it discusses grievance procedures or arbitration or similar administrative appeals. If you read that term arbitration, that's not arbitration under the Federal Arbitration Act. That's collective bargaining arbitration. Right. And nowhere in any statute or in any case of the one-sided from McKinney all the way down to Kidder and to Immel is there any discussion about the FAA, Gilmer, or Garrett and Landis. And I think it's important to note that in most recently in the Russell case where appellant contends there's a circuit split, Russell comes out after Gilmer, Garrett, and Landis and references nothing about those cases. You're talking about the Federal Circuit's case? Correct. The Federal Circuit case. It's not even published, so let's not so much worry about that. Correct. But again. Just come back to the language of the statute, though. Yes. So I guess I'm still confused as to what your position is. Are you saying that this USERRA does not grant or guarantee a right for the service member to sue in court? It provides the entitlement for a service member to file a case in court. But at the same time, it provides the same right to that service member and an employer as set forth in the H.R. in the House bill that was passed to contract under the FAA to arbitrate those claims. Well, no, no. Hang on. If this statute, the reference to the exercise of any such right, encompasses the right to sue in court, then I guess I don't see how you can read the additional prerequisites language as anything other than precluding a requirement that you arbitrate first before getting into court. Correct. Now, if the provision in this case said you had to arbitrate in some fashion before you got to court, I would concede to you that that would be a problem. But this is nothing more than a form selection clause, because as the House stated, the committee wishes to stress that rights under this chapter that belong to this claimant may be waived either explicitly or implicitly through conduct. And that is the arbitration agreement. But then the next sentence, though, says an express waiver of future statutory rights, such as one that an employer might wish to require as a condition of employment, would be contrary, and you know the rest of the language. And that seems to me dead on the money for what we're talking about here. No, but we go back to how rights and benefits are defined under 4303. And the right to sue in court, I'm saying, I don't read that as being encompassed within the defined term rights and benefits. I agree with you. For example, if a prospective waiver was you are going to waive your claim to you, Sarah, right from the start in order to be employed. You're going to review any right to reinstatement, shorten the statute of limitations, period. Anything that affects a substantive right as the term is defined, I would concede that. But I don't see that here. That's the position of BLB. Well, but if the statute, again, I'm just coming back to the same point I keep having. If the statute guarantees a right to sue in court, and I thought I heard you say that it does, then the reference to future statutory rights, it seems to me, would encompass. You're not going to be able to waive in advance that you're ever going to bring the action in court. You're going to have to make that decision about whether to waive your right once the right comes into into being. I believe that the entitlement to enforce those rights is set forth in the subsequent statutes and provides an avenue, very similar to all of the statutes that Gilmer cites to the ADEA. All of these statutes have similar provisions. Where are you going to bring a claim if aggrieved? And the FAA talks about, you know, in cases, whether it be from Italian colors down to the John Muhammadi case, which deals with issues in Iskanian here in the California Supreme Court, all deal with the fact that although there is this exercise of rights, and the Garrett case deals with this in the Fifth Circuit, it explains this, is that it's not a right as the term right is defined under 4302. You may have a right to bring a claim, but that's not one of the rights that are protected under the statute under 4302 and 4303. What they're dealing with here, particularly from the collective bargaining standpoint, is that you cannot set up a hurdle by way of collective bargaining to hinder an employee to get to the place in which to adjudicate their claims, essentially to place that hurdle. But the agreement here seems to force an employee to navigate a variety of different procedures that are not expressly contemplated by the statute, like a selection of an arbitrator in compliance with certain arbitration rules. Isn't that at least a reasonable interpretation? It is not, Your Honor, and I draw your attention to the Federal Arbitration Act and the deference we're given. Here in California, we follow the Armendariz test in state court as a matter of contract, and we look to such things as, is it substantively unconscionable? Do we limit discovery rights not present here? Do we limit remedies to Lieutenant Ziober not present here? Do we impose costs on Lieutenant Ziober that are unique to arbitration not present here? In fact, Appellant Ziober, in his opening brief, acknowledges that there is no substantively unconscionable provision anywhere in this agreement. The only argument up on appeal is whether there is a clear and unmistakable exclusion of USERRA from the Federal Arbitration Act, and there is none here. Appellant seeks to infer and make inferences and tie things together, and in fact the concurring opinion in the Landis decision in the Sixth Circuit, in fact, acknowledges this and says there is no clear and unmistakable exclusion of USERRA from the FAA. In fact, nowhere in USERRA, nowhere in the House report, nowhere in the Senate report, is there any discussion of an arbitration agreement between a non-unionized employer and an employee, or alternatively, any discussion that there is some waiver of the FAA or of Gilmer, recognizing that USERRA was passed three years after Gilmer. It was right in the minds of those passing the legislation. And the provision here that we go back to, which is, grievance procedures or arbitration or similar administrative appeals, when you look at that term similar administrative appeals and refer it back to the first two, it becomes readily apparent that they're dealing with a unionized environment, where that hurdle is the collective bargaining, which I concede, and there's a case, in fact, that I understand that counsel for the appellant is arguing this before the Eleventh Circuit, where there is a situation by which there are some additional prerequisites prior to arbitrating the case. Let me just ask you, because your time is running out. Yes. It does seem that both the Supreme Court and our court have suggested that we should construe any ambiguities regarding veterans' reemployment rights statutes in favor of the veteran. So it seems like that may distinguish this case from some of the others that you have been referring to. And so doesn't that make this case different in the context of the Federal Arbitration Act? Because it seems like here the agreement to arbitrate forecloses a judicial form that the statute expressly contemplates for veterans. Thank you, Your Honor. I take a different position. If you look at all the cases that deal with the deference, the deference is not to the resort to judicial recourse. It's the definition of term and condition, meaning how broadly are we going to define rights, the terms and conditions under 4303, specifically seniority rights. How expansive are we going to give that term and give deference to the veteran? How are we going to do that with respect to pension or with respect to holiday pay? Again, the deference being given, even in the cases cited by the appellant, are giving deference to the terms of which they are seeking to exercise their right to recover, and then they challenge the agreement by looking to the second prong as the additional prerequisite. But with respect to Your Honor's comment about deference being given, I would only indicate that between Concepcion, Italian Colors, Iskanian, John Mohammadi, all cases involving the Federal Arbitration Act, there is also a liberal policy giving deference to arbitration that is clearly established between a private employer and an employee. And that deference, it filters down to the district courts in our circuit, both in California and in Arizona, for example, the Shields case in Arizona, that gives that same deference to the Federal Arbitration Act. And as you look at it, what occurs here is there is nothing in this agreement that creates a bar before Lieutenant Ziober is able to arbitrate his claims, nor is there a substantively unconscionable provision that limits any of the terms and conditions specifically outlined in 4303. I have two more questions. You guys indulge me? So the first question is, I think it's 4322 sets up this scheme whereby the service member can first invoke the powers of the Department of Labor, that whole process, right? Yes. So just out of curiosity, if the plaintiff here had invoked that process, would you have invoked the arbitration clause and said, no, you are barred from doing that, the thing says you can only seek redress through arbitration? It depends on the specific point. And I'll draw an analogous term to Title VII claims. We can't arbitrate EEOC and DFVH charges when it gets to that level, okay? If an individual then files a private right of action after exhausting that claim, we can invoke the arbitration agreement. It happens all the time as part of an administrative remedy, okay? Here, the question then becomes, it would depend, I guess, on the manner in which the case is brought against the employer. If it's brought specifically perhaps as a class action case, the question would become, are there arbitration agreements amongst all of the class members? Let me be more specific in my concern. The mechanism there is that the department, I think it's the secretary, will sort of try to work this out amicably, right? Correct. And if that doesn't work, then the service member has the option, I think, or the secretary has the option of referring it to the attorney general. Correct. And if the attorney general determines that the action, the claim has merit, the attorney general can then sort of step into the shoes of the service member and bring suit in the name of the United States. That is correct. And so that's what I'm asking. If all of that had happened here, would you then take the position that, Madam Attorney General, you must now litigate on behalf of the service member in arbitration? Pursuant to the pre-dispute arbitration agreement, yes. So you think that's what Congress intended when it enacted? That's a pretty unique provision. I don't know of many other statutes that has the attorney general suing on behalf of an individual plaintiff. You think Congress meant for the attorney general to make his or her way down to the AAA offices? Well, if you think about it, Your Honor, the statute that protects the veteran is not covered under Title VII, so it doesn't have the EEOC to file the claim on its behalf. It doesn't have the Department of Labor, per se, to file a claim on its behalf. These claims are routed to the attorney general based upon the fact that it doesn't fit underneath the guise of a certain administrative agency. I think the argument would be an uphill battle for us, candidly, if the Department of Justice itself brought a claim on behalf of Lieutenant Ziober, recognizing there is case law about when the EEOC, for example, brings a claim, whether or not those claims are subject to arbitration. But I think what's important about Your Honor's question is there are alternative mechanisms provided under the statute, not just this right to bring a claim where someone has multiple avenues in which to seek redress. And that type of redress can also be brought by arbitration. Why is that important? There is no additional prerequisite before getting to that final line of adjudicating the claim. There is no provision here that says that we have some internal grievance procedure or prior to filing that complaint you have to come to us first to file an internal complaint. I would acknowledge that would be problematic in this agreement, but we don't have that. But Lieutenant Ziober had three options here. He could have either filed this claim through agencies set forth under the statute. He could have filed a civil lawsuit, in which case what he did here, in which we motioned to compel arbitration and the lower court enforced it, or he could have filed a demand for arbitration pursuant to the pre-dispute arbitration agreement he had. All of those, all of those avenues would have allowed for him to adjudicate his claims with the same discovery rights, the same remedies with no requisite. Okay, one last question. I'm sorry. I know you're over. But the statute, again, somewhat uniquely, really places an emphasis on the power of the district court once a service member brings the action to invoke. I think it's like it's the full equity powers of the district court shall be available. And I think that's got to be because the Congress wanted district courts to be able to enforce the provisions of USERRA through injunctive relief and invoke the contempt powers of the court if employers like your client failed for whatever reason to get their act together. Could an arbitrator award comparable relief? It could. Okay. The statute allows for injunctive relief either through arbitration or if Lieutenant Ziober wanted to. Relief, though, directed beyond the plaintiff's individual claim? Because the injunctive relief that the statute is contemplating is let's say that your client had a practice, that it didn't just apply to this one service member, but it was applying across the board, and that practice was determined to be illegal under USERRA. The district court could then issue an injunction saying, employer, thou shalt change this practice to bring it into compliance. And if you don't, obviously the court's contempt powers could be invoked at that point. You're saying that an arbitrator under the AAA rules can do the same thing? Both the district court and the arbitrator can do that. An arbitrator issues the injunction, and then very similar to an award at the end of the case, you go and confirm the award or the injunction in district court. It can happen either one of two ways. The situation Your Honor brings up, the fact pattern is a little different because if I'm seeking injunctive relief on behalf of numerous individuals, all those individuals might not have pre-dispute arbitration agreements. So the avenue for that situation that you present might just be to go directly to district court and determine the employer would have to prove that every single person in the proposed class would have. That's not the way injunctive relief has to work, though. It doesn't have to be in the context of a class action. If an individual plaintiff brings an action and the district court looks at the practice that gave rise to the claim and says this is illegal, the court, under this statute especially, can invoke its full equity powers to say you are commanded to change that practice to bring it into compliance with law. Correct. In the injunctive relief statute, I believe that Lieutenant Ziober, if he believed that to be the case, could go to the arbitrator, get the injunctive relief, very similar to an award of remedies at the end of the case, and go to the district court and enforce that injunctive relief. Okay. All right. I've taken you over your time. Thank you. Thank you very much, Your Honor. Thanks. You're very welcome. Thanks. I'd like to address very quickly some of the points that defendants made. To Dwayne, you're absolutely right. If you look back to McKinney, to USERA, from McKinney up until the time of USERA, the Supreme Court, Congress have made clear this is an unusual statute, not about employees, but about vindicating the rights of all service members. That's the language that the Supreme Court used in 1958, Justice Frankfurter used to describe it. And there is a problem with making my client go to arbitration to get an injunctive relief award from the arbitrator. There's a big delay in getting back to federal court and enforcing that award. McKinney said the service member has to be able to get expeditiously into court to get reemployed because reemployment is the purpose of the law. My client, when he came back from Afghanistan, had no job because he was fired and refused reemployment. A federal court could have reinstated him right away the first day that he showed up and said this is illegal. My opponent misstated the question of when the United States brings in action. In a case of a private employer, under 4323A1, the United States is not the party. The United States is just a lawyer for the plaintiff. It would be Ziober versus BLB, and they would, as Garrett and Landis said, the Fifth and Sixth Circuits, DOJ would be forced to arbitrate the claim, which is very odd. The only instance, as this court pointed out in the Townsend case, the only instance where the United States appears as the United States as a party is when there's a state being sued, and that's to avoid sovereign immunity issues. So there's a reason why that oddity is in the statute. But DOJ and DOL have told Congress they would like pattern or practice authority to be able to sue without a complaint going to DOL and be able to sue in their own name to make it more powerful, kind of like when the EEOC brings a suit in its own name. In terms of the liberal canon of interpreting this law, again, they've misstated how it applies. This court, from 1949 in the Tsang, T-S-A-N-G, decision to Immel, has said that procedural and jurisdictional questions get the benefit of the liberal canon under Fishgall. In Tsang, this court in 1949 said if a service member wants to bring a case in state court in northern California rather than driving all the way down to file in federal court and save the time and money, that this court construed USERRA's predecessor law to allow for suit in federal or state court to give the benefit to the service member of that jurisdictional question. And that's what, again, in Immel versus the laborers case, this court reiterated that jurisdictional questions get the liberal canon. To your point earlier, Judge Watford, about where does the statute say there's a right of action, in addition to 4323, in 4327, which deals with the question of the referral from DOL to DOJ and some time limits that Congress put in, Congress said that even if a person, even if the DOJ doesn't file the time limits required by the statute, it, quote, shall not affect the right of a person to commence an action. It couldn't be more clear that Congress understands 4323 as a right to commence an action. And then in 4302B, it's making even more clear that the right or benefit that can't be given up under the statute, as you pointed out, about exercising rights, it includes procedural rights. Go back to 4327, because I'm looking at it now. Just tell me what you were reading from it. It says the noncompliance of the federal officials under AB, then, shall not affect the right of a person to commence an action under section 4323. And that 4323 is where it gives you the right to bring an action in a federal district court, if you're suing a private employer. One, I think, very odd point, both in Garrett, where Judge Edith Jones made a big mistake in looking at the legislative history, and that our opponents make here, is they assume that there's some sort of artificial distinction between union and nonunion arbitration under the law. That might have been viewed by some courts as the case, based on the Gardner-Denver decision from 1974, a Supreme Court decision. But in 14 Penn Plaza v. Pyatt, the Supreme Court, Clarence Thomas writing for the court, clarified that there was never such a distinction. That unless there's textual evidence in the law that distinguishes between union and nonunion arbitration, the court assumes that when you're looking at whether you can compel arbitration, and how the rules work, union and nonunion arbitration is exactly the same. And in the legislative history of the House report, there's no indication that Congress was looking at something else. If you look at the Leonard v. United Airlines decision that the Seventh Circuit decided, it's cited in the paragraph that's talking about, that you referenced, Your Honor, about how you can't waive your future statutory rights. In the same site, Penn site, that the House report cites in Leonard, Judge Cudahy for the Seventh Circuit said the same principle of Fishgold and McKinney, that says union worker, that says that you can't waive your rights under the VRRA, the Veterans Reemployment Rights Law. It would seem to apply to nonunion workers equally to, as it does to union workers. There's no reason why an individual should be able to allow to waive their rights. If you think, actually, just in policy terms, a union worker like my client, who's six months into his job, gets a form and says, You've got to sign this or you're fired. How much power does he have to actually do that voluntarily? Again, the House report says it has to be voluntary, any waiver. How is that compared to someone who has a union, a railroad workers union, where we have 90% plus union density in this country, where you've got a representative, they've got a lawyer, they negotiate a contract. It makes no sense to treat people who are on their own, with no one defending them, to treat them worse than union workers, where Justice Thomas says there should be no assumption that the union is going to undermine the rights of the individuals. If a person doesn't like what the union does for them, as this Court sees all the time, they can bring a duty of fair representation claim against the union and sue in federal court under Section 301 of the LMRA. That's their remedy. Their remedy is not to have some sort of artificial protection of their rights as an individual to be protected from the union. And that's, you know, that's 100% clear after the 14th and Plaza case. I don't know why state law would be relevant. This is a question of federal law. Hang on. You're going here, but let me just interject. I guess I thought maybe the reason the union case is referenced in the House report might be viewed differently. But maybe you addressed this a second ago, and I just didn't catch it. If you go back and look at those cases, they were saying the reason that arbitration under the auspices of a CBA would be kind of an additional hurdle before getting into court is because the arbitrator in that context doesn't have the authority to rule on the validity of a statutory claim. All the arbitrator has the authority to do is construe the terms of the collective bargaining agreement. Right, that was at least the settled doctrine back then. And so all you were going to get if you made the service member go through this CBA version of arbitration was not a resolution of the claim on the merits, which is what would occur here if we uphold the defendant's reading, but rather just this sort of meaningless construction of the collective bargaining agreement's terms. And then the person would have to go into court and litigate the merits of the statutory claim. That would obviously delay things quite a bit for no good reason. So I thought that's the reason why the union cases were different. But tell me if I'm wrong on that. Well, I think you have to read these cases in light of what the Supreme Court now believes its cases always meant. In terms of Gardner-Denver and the prior cases that dealt with how you arbitrate and what disputes can be submitted to arbitration. I think, though, in McKinney and his progeny, these are instances where the service member has been asked to arbitrate their full and finally resolve their claim on the merits. The reference in McKinney to the National Railroad Adjustment Board is a reference to binding arbitration under the Railway Labor Act. And so I don't think that there's not. But it wouldn't be binding arbitration of a USERA predecessor claim, right? That's not what the arbitrator would have the authority to rule on. I think they would have the authority to rule on at least the aspect that deals with the seniority. Because the union contract allows putting aside the federal claim. The union contract always allows the arbitrator to decide issues of seniority, contractual issues like that. Under the terms of the collective bargaining agreement, right. But that's what USERA is basically going to come in and trump whatever the collective bargaining agreement says. And that's why the court said it's a waste of time to make the service member go through this meaningless arbitration proceeding. Because that arbitrator is not ultimately going to have the authority to rule on the claim that we want the service member to vindicate. Well, I think if you look at 14 Penn Plaza, the question about what issue can be decided by the arbitrator is a question of looking at the CBA. And we now know, as I think the Supreme Court maybe always knew, that if the union and the employer agree that statutory claims can be decided or issues that relate to statutory claims can be decided by the arbitrator, under 14 Penn Plaza it doesn't make a difference whether it's a union or non-union. The arbitrator can decide it. And, you know, to even a greater extent than the Federal Arbitration Act, the Railway Labor Act says that the determination of the neutral is conclusive. That's the exact same way. And if you look at the Supreme Court's jurisprudence even beyond 14 Penn Plaza, you see case after case, including in this circuit as well, where the standards for reviewing an arbitration award are the exact same for a union arbitration versus a non-union arbitration. I think, you know, at the end of the day, you have to, this court has to look for contrary congressional command. And I go back to those three, you know, those two to three sentences. Even if, you know, regardless of whether you consider you think that arbitration is a prerequisite or not, right, even though the Supreme Court has called it a prerequisite in the Alpa v. Miller case, regardless of that, the fact that the House report says even if you go to arbitration and the arbitrator issues a decision about USERRA, your USERRA rights, you can't enforce it in federal court. That's where you're wrong. The arbitrator there is not going to have authority in the context of a CBA-type arbitration. It's not going to have the authority to rule on the merits of the USERRA claim. That's why it's not going to be binding with respect to the merits of the USERRA claim once you get into federal court. That's how I read those cases. I think that's a different question. That's a different line of cases. That's what Gardner-Denver is about. That's what 14 Penn Plaza says Gardner-Denver was about, is whether the precise issue was referred to the arbitrator. But in this instance, if you look at these cases, if you look at, like, for example, Kitter, which is the case where they're talking about whether the person can be required, whether the arbitration award would be binding even if it was awarded, in that instance, the person was being asked to arbitrate the merits of their USERRA predecessor claim, not just the grievance or seniority question. And so ‑‑ And I think the court in Kitter, and this is where I'm getting this from, the court in Kitter said the arbitrator would not have had the authority to do that because all the arbitrator would have been able to do was to construe the terms of the CBA. Right. I think if you look at Kitter, there are two ways, there are two grounds on which Kitter actually decided that. That one, admittedly, is kind of the Gardner-Denver line of reasoning that Your Honor is pointing out, that it's a question of whether the arbitrator would have had authority under the CBA to decide that question. But at the end of the opinion, independent of all of that, they cite McKinney for a different proposition. And they say, even if the plaintiff had proceeded to arbitration and received an unfavorable ruling, his right to proceed in federal court would not have been extinguished for the federal courts or the exclusive forum for the vindication of these distinctly federal rights. And they cite to McKinney, which is a different principle. I realize that it seems similar because the premise of McKinney can sound a lot like the Gardner-Denver line of cases, or at least how we thought of them a long time ago. But if you look at McKinney and what they were talking about, they're talking about the speedy vindication of your rights in court. They cite some of the unique, I didn't get to mention this earlier, but some of the unique things about USERRA that were part of the statute back in 1958 that exist today, like the right to file in any district court where the employer has a place of business, like the right to not pay any fees or costs, no exhaustion. All of these things are things that the Supreme Court said in that opinion in McKinney were important to allowing the veteran to vindicate his rights and also the rights of everyone else. Thank you. Thank you. Thank you both, Mr. Romer-Friedman and Mr. Giamella, for your helpful arguments in this very challenging case. Thank you very much. Thank you, Your Honor.
judges: Murguia, Watford, Bolton